## WILLIAM SELKIRK *vs.* GEORGE H. COBB.

The striking out by the presiding judge, after the commencement of the arguments to the jury, of incompetent evidence which has been admitted without objection, is no ground of exception.

The title of a principal to goods purchased in his behalf and with his money by his agent without fraud or such conduct in reference to the purchase as to deceive the agent's creditors, is not affected, as against an attaching creditor of the agent, by the agent's having for a long time previous held himself out to this creditor and other persons as dealing on his own account in other similar transactions.

In trover, the measure of damages is the value of the property at the time of the conversion; and if the jury are so instructed, a refusal to instruct them that the plaintiff is entitled to recover only the value at the time and place of conversion is no ground of exception.

ACTION OF TORT against a deputy sheriff for the conversion of a quantity of scrap iron, attached by the defendant as the property of John Race.

At the trial in the court of common pleas, before *Bishop*, J., the plaintiff introduced evidence tending to show that Race had been employed, for three years, as the plaintiff's agent for the purchase of iron, and had purchased, in small quanties, the iron in dispute for the plaintiff, with money furnished by the latter. But there was evidence tending to show that no notice had been given that the business in which Race was engaged was done on account of the plaintiff; and that many persons with whom Race dealt believed him to be acting for himself in purchasing iron. One of the attaching creditors testified that the claim upon which the attachment had been made was for seven tons of iron sold to Race in October 1856; that they never knew he was dealing in any way except on his own account; that Race had bought quite extensively, and, at the time the seven tons were purchased, was doing a business which gave him a credit. The defendant testified that he found Race unloading iron at the station at West Stockbridge, and that no intimation was given him that any other person was interested in it.

Two mortgages of personal property from Race to the plaintiff were put in evidence by the defendant, without objection; and other mortgages were offered by him, but were objected to

by the plaintiff and excluded by the court. In his closing argu-
ment to the jury, the defendant's counsel was commenting upon
these mortgages, when, upon the plaintiff's objection, the court
ordered the two mortgages, and all evidence respecting them, to
be struck out of the case.

The defendant requested the judge to instruct the jury, " that
even if they found that the iron attached had been purchased
by the plaintiff, yet if Race, during the three years in which
he had been acting as agent for the plaintiff, had held himself
out to the public as a buyer and seller on his own account, and
had so dealt with the attaching creditors, and under this sup-
position they had entrusted their property to him, and given him
credit, and this was known to the plaintiff, who permitted it, the
plaintiff could not now come in and claim the iron as against
the attaching creditors." But the presiding judge declined
so to instruct, and instructed the jury " that other transactions
between Race and the plaintiff, although they might have been
fraudulent, could not affect this suit; that the jury must be sat-
isfied that the conduct of the plaintiff, with regard to this par-
ticular lot of iron, had been such as to mislead and deceive the
officer as to its ownership; that if they were satisfied that the
iron had been purchased by Race, as the plaintiff's agent and
with the plaintiff's money, and without fraud upon the part of
the plaintiff, and that he had not so conducted himself with
reference to this purchase as to deceive the officer, the plaintiff
was entitled to recover.

The defendant also requested the judge to rule that if the
plaintiff was entitled to recover, " he could recover only the
market value of the iron at the time and place of conversion."
But the judge declined so to rule, and instructed the jury that
" the plaintiff was entitled to recover such sum as upon the evi-
dence they thought the iron was worth at the time of the con-
version."

The jury returned a verdict for the plaintiff, and the defend-
ant alleged exceptions.

*J. E. Field,* for the defendant. 1. The mortgages and testi-
mony connected therewith, which had been given in evidence

Selkirk *v.* Cobb.

without objection, were erroneously stricken out by the court, after the commencement of the closing arguments, and when it was too late for the defendant to supply their place with other evidence, which he might have done if they had never been admitted.

2. The instructions asked for should have been given, as to the right of the plaintiff·to claim the iron as against these attaching creditors. *Hicks* v. *Cram*, 17 Verm. 449. *Bursley* v. *Hamilton*, 15 Pick. 40. *Kinney* v. *Farnsworth*, 17 Conn. 355. *Roe* v. *Jerome*, 18 Conn. 138. *Cowles* v. *Bacon*, 21 Conn. 451.

3. The rule of damages which was stated by the defendant is the true rule, and should have been adopted. *Wells* v. *Abernethy*, 5 Conn. 222.

*J. Branning*, for the plaintiff.

MERRICK, J. 1. It appears that in the progress of the trial two mortgages of personal property, made by Race to the plaintiff, were produced and read in evidence, without objection. But when, at a later stage, other similar mortgages were produced and offered to be laid as proof before the jury, they were objected to as irrelevant, and were excluded by the court. Afterwards, while the defendant's counsel was making his concluding argument and commenting upon the testimony, the court, upon an objection then interposed by the plaintiff, ordered the mortgages and all the testimony connected therewith to be stricken out of the case.

To this, exception was taken by the defendant; but the exception ought not to be sustained. There was doubtless some irregularity in the proceeding. The attention of the court ought properly to have been called directly to this matter at an earlier stage in the trial. The omission to do so may have been the result of misapprehension as to the extent of the ruling and direction given when the mortgages subsequently offered were objected to and excluded. But whatever was the cause of delay in reference to the objection to the admissibility of the two first mentioned mortgages, there is no reason why they should have been allowed to have an influence upon the final determination of the questions at issue between the parties, since they were

manifestly incompetent for that purpose. This is now conceded by the defendant. He does not complain that he was deprived of the advantage of any legal and admissible evidence; but only that certain facts, which had been laid by him before the jury without objection, and which had no competency whatever as proof in the case, were withdrawn by order of the court from their attention. If the objection had been that, in consequence of the reception of the mortgages in evidence without objection, the course of the trial had been in any degree varied, on the part of the defendant, so that a formal withdrawal of them at a subsequent stage would have operated as a disadvantage to him, he might have had a just ground of complaint. But nothing of this kind appears. His alleged grievance is, that he was not permitted to avail himself of the proof concerning these mortgages; that is, that he was not allowed to influence the jury and procure a verdict by means of evidence not admissible, or allowable by law. It would be alike unreasonable and unjust, that such a complaint should be sustained. There should undoubtedly be care and vigilance to prevent such irregularity as that which occurred on the trial; but if it be found that by some inadvertence it had happened, it would be the duty of the court to correct it as soon as possible, and then explain the whole matter to the jury in such way as to make it sure that the rights of neither party should be affected by it. As it is not pretended that there was any want of proper and suitable explanations upon this subject, it may be presumed that all proper and necessary advice and instructions were given to the jury to prevent any possible injury to either party by the course which was pursued.

2. The refusal of the presiding judge to adopt and give to the jury the instructions suggested by the defendant must be considered, in view of the rule which was in fact laid down for their guidance, to have been correct. The question to be determined was, to whom the scrap iron, which was the subject in cor-versy, belonged. If the plaintiff, through the agency had purchased it and paid for it with his own money ι∙ come into possession of it, and had in no respect been g᾽ fraud in relation to the transaction, it was certainly his, ₂

one could justly contest his right to it. And this was the direc-tion in matter of law that was given to the jury. Other trans-actions, though fraudulent as against the creditors of Race, could not invalidate this, if it was obnoxious to no such objection. We do not understand that the jury were excluded from consid-ering the evidence with respect to the conduct and course of dealing of Race during the preceding three years, and the knowl-edge of it by the plaintiff, as it bore upon the question whether the property in dispute was attachable by his creditors as the property of Race, on the ground that it was fraudulently con-veyed to the plaintiff. This they were allowed to do ; but in the end, after weighing all the evidence, they were finally to determine whether the plaintiff had fairly and without fraud become the owner and possessor of the iron before it was taken on legal process by Cobb as the property of Race. Though his creditors may have been deceived or misled in reference to other property or other transactions, by the conduct or course of deal-ing of Race or of the plaintiff, yet if they were not in relation to this specific property, they have not been injured, or deprived of any just or legal advantage, of which they ought to have had the benefit. They could not interfere with the rights of the plaintiff, honestly and fairly acquired in this instance, although there may have been just ground of objection to his transac-tion in other negotiations.

3. The rule is perfectly well established, that in actions of tort for the seizure and conversion of personal property, the measure of damages is its value at the time of the conversion. This was so stated by the court in its directions to the jury, which were therefore in that particular entirely correct. The additional qualification, asked for by the defendant, that the market value of the property at the place where it was converted should be taken into consideration, was properly refused. " Place," as used in this connection, was indefinite and uncertain. If adopted, it might have misled the jury by its being supposed to limit them in ascertaining the value of the property to inqui-ries as to sales made on the precise spot where the conversion took place, or its immediate vicinity. Within such a circum-

27 *

scribed range, it may have been impossible to find that the property had there acquired any marketable value. It is sufficient that the true and established rule of law upon the subject was distinctly stated as the basis upon which the verdict ought to be rendered. *Exceptions overruled.*